IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NEXGEL, INC.<br><br>        Plaintiff,<br><br>v.<br><br>KISS NAIL PRODUCTS, INC.<br><br>        Defendant. | Civil Action No:_____<br><br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff, NEXGEL, Inc. ("NEXGEL" or "Plaintiff") by and through its attorneys, files this Complaint against Kiss Nail Products, Inc. ("KISS" or "Defendant"), and alleges as follows:

**PRELIMINARY STATEMENT**

1. NEXGEL seeks a declaratory judgment that U.S. Patent No. 12,171,288 (the "'288 Patent") is invalid. This dispute relates to a takedown notice sent by Defendant to Amazon.com regarding ready-to-use eyelash extension products sold under the Silly George brand by NEXGEL.

**PARTIES**

2. NEXGEL is a Delaware corporation having its principal place of business located at 2150 Cabot Boulevard West, Suite B, in Langhorne, Pennsylvania, 19047.

3. Upon information and belief, KISS is a New York corporation having its principal place of business located at 25 Harbor Park Drive, Port Washington, New York, 11050.

**JURISDICTION AND VENUE**

4. This action arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the patent laws of the United States, 35 U.S.C. § 1 *et seq*.

5. This court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.

6. Personal jurisdiction over Defendant is proper in this district because Defendant issued a takedown notice to Amazon.com, claiming that one of NEXGEL's products infringed the claims of the Defendant's '288 Patent. Amazon.com then sent NEXGEL notice of Defendant's claim of patent infringement. NEXGEL received Defendant's takedown notice from Amazon.com at NEXGEL's headquarters in Langhorn, Pennsylvania, which is in this district. Defendant's complaint of patent infringement to Amazon.com constituted purposeful activity directed at NEXGEL, in NEXGEL's home forum - the Eastern District of Pennsylvania.

7. Venue is proper in this district under 28 U.S.C. § 1391(b) because Defendant is subject to personal jurisdiction in this judicial district, NEXGEL resides in this judicial district, and Defendant has directed its enforcement activities towards NEXGEL in this judicial district.

## FACTS

8. NEXGEL is an FDA registered and ISO certified facility which sells a variety of goods in the healthcare and consumer product industries. One of NEXGEL's products is the subject of this dispute: ready-to-use eyelash extension clusters sold on the Silly George Store on Amazon.com under the Silly George brand.

### The Patent at Issue

9. The '288 Patent entitled Ready-To-Use Eyelash Extensions, names Kichul Ahn, Jieun Kim, and Jane Bang as the inventors and states an issue date of December 24, 2024. Attached as Exhibit 1 is a copy of the '288 Patent.

10. The claims of the '288 Patent are directed to ready-to-use eyelash extensions.

11. On information and belief, Defendant is the assignee of all right, title, and interest in the '288 Patent.

## Existence of an Actual Controversy

12. There is an actual controversy within the jurisdiction of this Court under 28 U.S.C. §§ 2201 and 2202.

13. NEXGEL is the owner of the product Pop-On Lashes, sold under the Silly George brand. These eyelash extension clusters are sold through the Silly George store on Amazon.com.

14. On March 21, 2025, NEXGEL received an email from the Neutral Patent Evaluation Team at Amazon.com. In this email, the Neutral Patent Evaluation Team at Amazon.com informed NEXGEL that it had received a report from Defendant which indicated that the Silly George Pop-On Lashes infringed the claims of the '288 Patent.

15. NEXGEL has been advised by Amazon.com that if it does not take certain actions by April 11, 2025, its listing for the Silly George Pop-On Lashes will be removed from Amazon.com because of Defendant's complaint of infringement of the '288 Patent. Removal of the Silly George Pop-On Lashes from sale on Amazon.com will cause substantial and immediate financial and other injury and damage to NEXGEL.

16. One of the options made available to NEXGEL by Amazon to avoid removal of its products from sale was to initiate litigation in a federal district court on or before April 11, 2025 concerning the claims set forth in the takedown notice that Defendant sent to Amazon.com.

17. NEXGEL denies that it infringes any valid and enforceable claim of the '288 Patent.

18. Based on the foregoing, an immediate, real and justiciable controversy exists between NEXGEL and KISS as to whether the claims of the '288 Patent are valid.

19. Absent a declaration of invalidity, KISS will continue to wrongfully allege that NEXGEL's Pop-On Lashes infringe the claims of the '288 Patent and thereby cause NEXGEL irreparable injury and damage.

**COUNT ONE (Declaratory Judgment of Invalidity)**

20. NEXGEL repeats and realleges paragraphs 1 through 19 hereof, as if fully set forth herein.

21. An actual and substantial controversy has arisen and now exists between the parties concerning the validity of the '288 Patent.

22. Claims 1 through 19 are invalid because they fail to meet the conditions for patentability specified in 35 U.S.C. §§ 101, *et seq.*, including but not limited to 35 U.S.C. §§ 102, 103, and 112.

23. By way of example, and without limiting the grounds of invalidity that will be asserted in this action, the claims of the '288 Patent are invalid and 35 U.S.C. §§ 102 and/or 103 because they are anticipated and/or obvious in view of prior art.

24. Solely by way of example, and without limiting the grounds of invalidity or prior art that will be asserted in this action, examples of why the claims of the '288 Patent are invalid are set forth herein.

25. The application for the '288 Patent was filed on August 23, 2021. It received application No. 17/409,705 ("'705 Application") and included 17 claims.

26. In a first Office Action dated June 5, 2023, the patent examiner assigned to this application rejected claims 1 through 17.

27. In response, the applicants submitted arguments and amended claims for the examiner's consideration.

28. In an Office Action dated October 3, 2023, the patent examiner again rejected all of the claims in the application.

29. Additionally, the patent examiner made the October 3, 2023 Office Action "final".

30. The applicants again submitted amended claims after final rejection, on December 4, 2023. The amended claim 1 introduced the limitation that the adhesive element be applied to the eyelash filaments, "at a position away from the support strip…".

31. The amended claims submitted on December 4, 2023 were not entered because, according to the examiner, "Altering the scope of the claim in this manner requires further consideration to address the dependent claims not previously subject to the additional amended limitation." (Advisory Action of January 11, 2024, p.3)

32. In response, the applicants submitted a Request for Continued Examination on January 11, 2024.

33. Along with the Request for Continued Examination, applicants amended claim 1 to add the limitation that the adhesive element be applied to the eyelash filaments, "at a position away from the support strip…", as well as that the adhesive element "is adapted to adhere to" natural eyelashes of a user. The applicants specifically argued in their submission that the quoted language had been added to overcome the Aylott and Roh references relied upon by the examiner in his claim rejections.

34. In an Office Action dated September 5, 2024, the patent examiner, yet again, rejected all claims. The examiner stated that the arguments advanced by the applicants in their January 11, 2024 submission were moot because of a new ground of rejection (over Lee, Shin, and Aylott) that did not rely on the prior art previously cited.

5

35. In response the applicants submitted amended claims on October 3, 2024.

36. In the October 3, 2024 amendment, the applicants removed the limitation that the adhesive elements must be applied to the eyelash filaments, "at a position away from the support strip", and instead introduced the limitation that the adhesive element be, "connected to the support strip". The applicants further introduced the limitation, "wherein the adhesive element extends from the support strip along the length of the eyelash filaments."

37. The applicants also introduced a new claim 19 as follows:

"19. An artificial eyelash extension system comprising:

a plurality of eyelash filaments, each of the plurality of eyelash filaments comprising a base and a tip;

a support strip attached to the bases of the eyelash filaments; and

an adhesive element connected to the support strip and disposed on the plurality of the eyelash filaments at least at their bases before the artificial eyelash extension system is packaged for sale to a user,

wherein the adhesive element is adapted to adhere to natural eyelashes of the user when the artificial eyelash extension system is applied."

38. The applicants specifically argued that the newly introduced limitations overcame the rejections in view of the Lee, Shin, and Aylott references, and that new claim 19 similarly contained the limitation, "an adhesive element connected to the support strip and disposed on the plurality of the eyelash filaments at least at their bases before the artificial eyelash extension system is packaged for sale to a user." which was not disclosed in the prior art references.

39. On October 18, 2024, the examiner conducted an interview with applicants' counsel Szymon Gurda, Esq.

40. The examiner proposed an amendment to claim 19 to read:

"19. An artificial eyelash extension system comprising:

a plurality of eyelash filaments, each of the plurality of eyelash filaments comprising a base and a tip;

a support strip attached to the bases of the eyelash filaments; and

an adhesive element disposed on the support strip and disposed on a portion of the plurality of the eyelash filaments that extend outward from the support strip,

wherein the adhesive element is adapted to adhere to natural eyelashes of the user when the artificial eyelash extension system is applied."

41. The examiner stated the reasons for allowance in the interview summary at p. 3. He stated, in pertinent parts, that reference JP #6130571, "does not teach an adhesive element extending from a support strip along a length of the eyelash filaments." That Nguyen (US Pat #D632,019), "does not teach the adhesive extending from a support strip along a length of the eyelash filaments. Nor does Nguyen teach adhesive provided along a portion of the eyelash filaments configured to attach to lashes of a user." And that KR # 101507695," does not teach providing adhesive along a length of the eyelash filaments."

42. Finally, the examiner stated, "None of the prior art teach or suggest providing eyelash extensions with a support strip; and a plurality of eyelash filaments extending from the support strip, with an adhesive element extending on the support strip and from a support strip along a length of the eyelash filaments wherein the adhesive element is adapted to adhere to natural eyelashes of the user when the artificial eyelash extension system is applied."

43. On October 31, 2024, the applicants submitted an interview summary approving the examiner's amendment to claim 19.

7

44. Thereafter, the patent examiner allowed the amended claims.

45. The application issued on December 24, 2024 as U.S. Patent No. 12,171,288.

46. The allowed claims included two independent claims: claim 1 and claim 19.

47. At least independent claims 1 and 19 of the '288 Patent are invalid for multiple reasons, some of which are set forth hereinafter.

48. Claims 1, 11-14, and 17 of the '288 Patent are invalid under 35 U.S.C. § 102(a)(1) as being anticipated by Aylott (U.S. Pat. No.3,935,872)("Aylott").  Attached as Exhibit 2 is a copy of the 3,935,872 Patent.

49. Concerning claim 1, Aylott discloses an artificial eyelash extension system which includes a plurality of eyelash filaments (3), each having a base and a tip (Figure 1 at right and left sides respectively); a support strip (Figure 1 at 2) attached to the bases of the eyelash filaments; and an adhesive element applied to the plurality of the eyelash filaments before the artificial eyelash extension system is packaged for sale to a user (Col 2, Lines 38-44).

50. Concerning claim 11, Aylott discloses the adhesive retains its stickiness during storage of the artificial eyelash extension system (Col 1, Lines 55-63).

51. Concerning claim 12, Aylott discloses a system adapted to attach to the user's natural eyelashes without application of additional adhesive to said natural eyelashes (Col 3, Lines 8-19 where no additional adhesive is applied to the natural eyelash that isn't already a part of the eyelash extension).

52. Concerning claim 13, Aylott discloses an elongated substrate (6) removably overlaying the adhesive element.

53. Concerning claim 14, Aylott discloses all eyelash filaments comprising the artificial eyelash extension system receive said adhesive element (see e.g. Figure 4).

54. Concerning claim 17, Aylott discloses the eyelash extension system is a flare of eyelashes (see Figure 4).

55. Claims 1-7, 9-14, and 17 are invalid under 35 U.S.C. § 102(a)(1) as being anticipated by Han (WO2015/116247)("Han"). Attached as Exhibit 3 is a copy of WO2015/116247.

56. Concerning claim 1, Han discloses an artificial eyelash extension system comprising: a plurality of eyelash filaments (see Figure 11 at 150), each having a base (130) and a tip (Figure 13 at opposite end from base); a support strip (Figure 13 at 158) attached to the bases of the eyelash filaments; and an adhesive element (152) applied to the plurality of the eyelash filaments before the artificial eyelash extension system is packaged for sale to a user (see arrangement of Figure 13, which is provided to the user as assembled).

57. Concerning claim 2, Han discloses the adhesive element is applied between the support strip and one half the eyelash filaments' average length away from the support strip (see Figure 13).

58. Concerning claim 3, Han discloses the adhesive element comprises an elongated substrate (Figure 11) having a longitudinal axis (see Figure 12), an upward-facing surface (Figure 13 at 154), a downward-facing surface (Figure 13 at 156), and an adhesive disposed on the upward-facing and downward- facing surfaces (see Figure 13 and Paragraph 00054), wherein the adhesive on the downward-facing surface contacts the eyelash filaments (see Figure 13).

59. Concerning claim 4, Han discloses that the adhesive on the upward-facing surface of the elongated substrate is removably overlaid with a second elongated substrate (Figure 13 at 28).

60. Concerning claim 5, Han discloses that the elongated substrate comprises a double-sided tape (Paragraph 00052).

61. Concerning claim 6, Han discloses that the adhesive on the upward-facing and the adhesive on the downward-facing surface of the elongated substrate are different (Paragraph 00054).

62. Concerning claim 7, Han discloses that the system is adapted for removal of the elongated substrate from the user's eyelashes without removing the elongated substrate from the eyelash filaments (Paragraph 00056).

63. Concerning claim 9, Han discloses that the adhesive element is applied to an upward- facing surface of the eyelash filaments.

64. Concerning claim 10, Han discloses that the adhesive is a continuous application applied at a location between the support strip and a one-half of the eyelash filaments' average length to a distance that is equal to or less than one-half of the eyelash filaments' average length (see Figure 13).

65. Concerning claim 11, Han discloses the adhesive retains its stickiness during storage of the artificial eyelash extension system (Paragraph 00019 which discloses point of sale, and Figure 7 which discloses use).

66. Concerning claim 12, Han discloses that the system is adapted to attach to the user's natural eyelashes without application of additional adhesive to said natural eyelashes.

67. Concerning claim 13, Han discloses an elongated substrate (28) removably overlaying the adhesive element.

68. Concerning claim 14, Han discloses all eyelash filaments comprising the artificial eyelash extension system receive said adhesive element (see e.g. Figure 12).

69. Concerning claim 17, Han discloses the eyelash extension system is a flare of eyelashes (see egg Figure 12).

70. Claims 2 and 8-10 are also invalid as obvious in view of Aylott.

71. Regarding claim 2, Aylott teaches a position on the filaments between the support strip and one-half the eyelash filaments' average length away from the support strip (see Figure 1, at the central section of the filaments contacting substrate 4). Aylott further teaches that the adhesive contacting the filaments is located within that central contact area (e.g., at 5 or 6 in Figure 2). However, while Aylott does not expressly teach the location of the adhesive to be applied between the halfway point of the filament length and the support strip, it would have been obvious to one of ordinary skill in the art at the time the invention was filed to modify the adhesive location of Aylott to be in the central lash contact area closer to the support, as the location is not critical to the invention as it nevertheless provides the adhesive within the disclosed central area region.

72. Regarding claim 8, Aylott teaches the adhesive element may comprise multiple discrete droplets of adhesive (Figure 2 at 5).

73. Regarding claim 9, Aylott teaches the adhesive element is applied to an upward-facing surface of the eyelash filaments.

74. Regarding claim 10, Aylott teaches the adhesive is a continuous application (Figure 2 at 5) applied at a location between the support strip and a one-half of the eyelash filaments' average length to a distance that is equal to or less than one-half of the eyelash filaments' average length (see Figure 1).

75. Claims 15-16 are invalid as obvious over Aylott, in view of U.S. Patent No. 8,225,800 ("Byrne"). Attached as Exhibit 4 is a copy of the 8,225,800 Patent.

76. Turning to claims 15-16, Aylott discloses that the eyelash filaments extend from the support strip, but does not teach at that least one-quarter of the eyelash filaments overlap each other. However, Byrne teaches providing an artificial eyelash array, where the arrangement of the individual filaments of each array can vary (see Byrne Figure 5), including providing arrays that contain filaments that overlap one another (Byrne Figure 5 at 52 and other similar arrangements). Therefore, it would have been obvious to one of ordinary skill in the art at the time the invention was filed to modify the arrangement of the filaments of Aylott to overlap one another, as taught by Byrne.

77. Claims 15-16 are invalid under 35 U.S.C. § 103 as being unpatentable over Han, in view of Byrne.

78. With respect to claims 15-16, Han teaches that the eyelash filaments extend from the support strip, but does not teach at least one-quarter of the eyelash filaments overlap. However, Byrne teaches providing an artificial eyelash array, where the arrangement of the individual filaments of each array can vary (see Byrne Figure 5), including providing arrays that contain filaments that overlap one another (Byrne Figure 5 at 52). Therefore, it would have been obvious to one of ordinary skill in the art at the time the invention was filed to modify the arrangement of the filaments of Han to overlap one another, as taught by Byrne, as a matter of user preference.

79. By way of further example, claims 1 and 19 are invalid as anticipated by the prior art, as set forth in the chart attached as Exhibit 5.

80. As a result of the acts described in the preceding paragraphs, there exists a controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment of invalidity.

81. A judicial declaration is necessary and appropriate so that NEXGEL may ascertain its rights regarding the validity of the '288 Patent.

82. NEXGEL is entitled to a declaratory judgment that the claims of the '288 Patent are invalid for failure to meet the conditions for patentability set forth in 35 U.S.C. § 101 et seq., including at least §§ 102, 103, and 112.

83. NEXGEL expressly reserves the right to assert additional grounds of invalidity, and/or unenforceability, including but without limitation, after conducting further research, after having the ability to conduct discovery, and after the Court has construed the claims.

## JURY DEMAND

NEXGEL demands a trial by jury on all issues that are so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, NEXGEL, Inc. requests judgment against Defendant as follows:

1. Adjudging that each of the claims of the '288 Patent is invalid and that Plaintiff has no liability for any infringement of any claim of the '288 Patent, whether based on theories of direct or indirect infringement, and either literally or under the doctrine of equivalents;

2. A judgment that Defendant and each of its officers, directors, agents, counsel, servants, employees, and all of persons in active concert or participation with any of them, be restrained and enjoined from alleging, representing, or otherwise stating that NEXGEL infringes any claims of the '288 Patent or from instituting or initiating any action or proceeding alleging infringement of any claims of the '288 Patent against NEXGEL or any customers, manufacturers, users, importers, or sellers of NEXGEL's products;

3. Declaring NEXGEL as the prevailing party and this case as exceptional, and awarding NEXGEL its reasonable attorneys' fees, pursuant to 35 U.S.C. § 285;

4. That Defendant be ordered to pay all fees, expenses, and costs associated with this action; and

5. Awarding such other and further relief as this Court deems just and proper.

Dated: April 9, 2025

                                                Respectfully submitted,

/s/ Lawrence A. Husick
Lawrence A. Husick
PA Bar 38,815
**Lipton Weinberger & Husick**
Southeastern, Pennsylvania, 19399
(610) 296-8259
lhusick@lwh-law.com

/s/ Anthony J. DiMarino, III
Anthony J. DiMarino, III
PA Bar 67,699
**DiMarino, Lehrer & Collazo, P.C.**
52 Haddonfield Berlin Road, Suite 1000
Cherry Hill, New Jersey 08034
(856) 888-1200
ajd@dimarinolaw.com

*Attorneys for Plaintiff NEXGEL. Inc.*